# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

MICHAEL W. CHAPPELL,       )
                                    )

          **Plaintiff,**       )
                                    )

          **v.**         )        **Case No. CIV-14-242-SPS**
                                    )

CAROLYN W. COLVIN,       )
**Acting Commissioner of the Social**   )
**Security Administration,**       )
                                    )

          **Defendant.**    )

## OPINION AND ORDER

The claimant Michael W. Chappell, requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

**Claimant's Background**

The claimant was born October 13, 1963, and was approximately forty-eight years old at the time of the administrative hearing (Tr. 127, 129). He has a ninth grade education and completed vocational training in auto body repair, and has worked as a painter/sander and rig operator (Tr. 38-39, 52). The claimant alleges that he has been unable to work since August 2, 2010, due to anxiety, depression, pulmonary problems, low back pain, bilateral shoulder pain, and left knee and ankle pain (Tr. 35, 45-46, 147, 189-90).

**Procedural History**

On October 18, 2010, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ James Bentley conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated November 2, 2012 (Tr. 11-24). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform a limited range of light work, *i.e.*, he could lift/carry ten pounds frequently and twenty pounds occasionally, and sit/stand/walk six hours in an eight-hour workday, but needed to avoid concentrated

exposure to dust, fumes, odors and poor ventilation. Due to psychologically based symptoms, the ALJ found the claimant could perform simple and some detailed tasks with routine supervision and could have no work related contact with the public. The ALJ noted the claimant could also perform sedentary work (Tr. 18). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was other work he could perform in the regional and national economies, *e. g.*, electric assembler, bench assembler, and housekeeper (Tr. 23).

## Review

The claimant contends that the ALJ erred by failing to properly: (i) evaluate the opinion of treating physician, Dr. Robert Wescott; (ii) evaluate the opinion of consultative examiner, Dr. Stephen Wilson; (iii) assess his RFC; and (iv) analyze his credibility. The undersigned Magistrate Judge finds that the ALJ *did fail* to property assess the evidence at step four, and the decision of the Commissioner must therefore be reversed.

The ALJ found that the claimant's mild chronic obstructive pulmonary disease (COPD), major depressive disorder (recurrent, moderate), and generalized anxiety disorder were severe impairments, but his mild degenerative disc disease of the lumbar spine, mild degenerative joint disease right shoulder, rotator cuff tear status post arthroscopic repair, hyperlipidemia, obesity, obstructive sleep apnea, and subjective complaints of left knee and ankle pain were nonsevere (Tr. 13-15). The relevant medical evidence as to physical impairments reveals that the claimant presented to Dr. Robert Wescott with right shoulder pain on August 20, 2008, and bilateral shoulder pain and

right hand numbness on October 20, 2008 (Tr. 333, 335). Dr. Wescott prescribed medications for pain and muscle spasms, assessed the claimant with rotator cuff syndrome not otherwise specified and referred him to Dr. David Bobb, an orthopedic specialist (Tr. 333-336). Dr. Bobb examined the claimant on October 23, 2008, and assessed him with rotator cuff syndrome not otherwise specified, degenerative shoulder arthritis, and carpal tunnel syndrome (Tr. 236). Dr. Bobb recommended arthroscopic decompression surgery on the claimant's right shoulder and fitted him with nighttime braces for carpal tunnel syndrome. Dr. Bobb noted the claimant may need further treatment and neurometer testing for carpal tunnel syndrome; however, the record does not contain any further testing or treatment for carpal tunnel syndrome (Tr. 236). The claimant underwent right rotator cuff repair surgery on November 14, 2008 (Tr. 239). At the claimant's final post-operative visit on March 9, 2009, Dr. Bobb noted the claimant's range of motion was improved and his rotator cuff testing was weak and fatigued with repeated supraspinatus and infraspinatus testing, but was minimally painful (Tr. 226). Dr. Bobb released the claimant to return to work on May 14, 2009 (Tr. 227).

In March 2010, the claimant presented to Christine Craig, a physician's assistant at Dr. Wescott's office, with symptoms of a respiratory infection and shortness of breath. Ms. Craig diagnosed the claimant with pneumonia and bronchospasms and prescribed antibiotics, an anti-inflammatory, and a rescue inhaler (Tr. 347). The claimant returned to Ms. Craig for follow up appointments on April 16, 2010, April 19, 2010, and April 22, 2010, with continued coughing and shortness of breath (Tr. 349-52, 353-54, 355-58). At each follow up appointment, Ms. Craig adjusted the claimant's medications (Tr. 350,

352, 354). On May 4, 2010, Ms. Craig conducted pulmonary function tests which did not indicate lung disease and Dr. Wescott released the claimant to return to work on May 5, 2010 (Tr. 282, 359). The claimant presented to Dr. Wescott on July 2, 2010, with coughing, wheezing, and shortness of breath (Tr. 366). Dr. Wescott assessed the claimant with chronic bronchitis and acute bronchitis with tracheitis, prescribed an antibiotic and an anti-inflammatory, and referred him to Dr. Andrew Goldberg, a pulmonologist (Tr. 367). The claimant returned to Dr. Wescott on July 19, 2010 with continued coughing, wheezing and shortness of breath; Dr. Wescott prescribed another course of antibiotics and released the claimant to return to work on August 19, 2010 (Tr. 284, 369-370). The next day, Dr. Wescott completed an attending physician statement form related to a short term disability claim the claimant initiated on July 19, 2010 (Tr. 292-96). On this form, Dr. Wescott indicated the claimant's shortness of breath prevented him from working and opined that the claimant could sit frequently (defined as 34-66%), reach above shoulder level and stand occasionally (defined as 1-33%), and could never walk, climb, twist/bend/stoop, operate heavy machinery, or lift (Tr. 295). He also stated the claimant was restricted from doing any physical activity (Tr. 296). The claimant returned to Ms. Craig on August 17, 2010, with a continuing cough and burning sensation in his right lung and on November 16, 2010, with head congestion, cough, headache, fever, body aches, and sore throat. She prescribed an antibiotic and rescue inhaler at both visits (Tr. 376-77, 382-83).

Dr. Andrew Goldberg, a pulmonologist, evaluated the claimant on August 20, 2010, for shortness of breath, coughing, and wheezing (Tr. 271-74). He conducted a

pulmonary function test that revealed mild obstruction with a near significant bronchodilator response and assessed the claimant with chronic obstruction pulmonary disease (COPD) with severe acute exacerbation, shortness of breath, cough, wheezing, and left lung nodule (Tr. 272). He noted the claimant had some evidence of reversibility and prescribed a course of systemic steroids, a daily preventive inhaler, and more frequent nebulizer treatments (Tr. 273). The claimant followed up with Dr. Goldberg on September 8, 2010, and reported significant improvement (Tr. 269). Spirometry testing revealed improved mild obstruction and the claimant's cough and wheezing were resolved (Tr. 270). Dr. Goldberg recommended that the claimant continue the course of treatment prescribed, refrain from smoking and exposure to other respiratory irritants, return for a follow up in January 2011, repeat spirometry testing in a year, and get both a pneumonia and flu vaccination (Tr. 270).

On August 26, 2010, Dr. Stephen Wilson evaluated the claimant in connection with his short term disability claim, which revealed normal expiratory cycles with no rales, rhonchi, or wheezing (Tr. 264-266). He opined that the claimant was temporarily totally disabled and had been since July 1, 2010, due to the cumulative respiratory system injuries sustained during employment related activities (Tr. 265). Dr. Wilson indicated the claimant would remain temporarily totally disabled for an undetermined amount of time pending further evaluation and treatment and recommended continued treatment under the direction of Dr. Goldberg (Tr. 266).

State reviewing physician Dr. Hollis Rogers completed a Physical Residual Functional Capacity Assessment on June 17, 2011, wherein he opined that the claimant

was capable of medium work, but needed to avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. (Tr. 420-28).

At the administrative hearing, the claimant testified that he was unable to work because of pain in his shoulders, back, knee and ankle (Tr. 35). He stated he had continuous pain in his left shoulder, back and knee, but the pain in his ankle varied based on his activity level and that his right shoulder was "working fine" (Tr. 46-48). Regarding his breathing problems, he stated smoke, fumes, pollen, and household cleaning products affected his breathing and that he had not consulted with Dr. Goldberg in the past "year or two" because he did not have sufficient financial means or insurance (Tr. 46, 49).

In his written opinion, the ALJ discussed the claimant's function report and hearing testimony and summarized most of the medical evidence, but did not discuss the claimant's left shoulder problem or his carpal tunnel syndrome. The ALJ gave the opinions of Dr. Wescott and Dr. Wilson "little weight," finding they were not fully supported by or consistent with the medical record as a whole (Tr. 21). He then gave "great weight" to the state agency physicians, finding they were fully supported by and consistent with the medical record as a whole (Tr. 22). The ALJ did not discuss the claimant's non-severe impairments at step four.

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d

1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors are: (i) the length of treatment relationship and frequency of examination; (ii) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ thoroughly summarized both Dr. Wescott's and Dr. Wilson's reports; however, his finding of inconsistency was based solely on Dr. Goldberg's September 8, 2010, treatment note, and he did not mention, much less connect the evidence in the record, to any of the other pertinent factors. The Commissioner argues that Dr. Wilson's opinion on the claimant's disability as well as the functional limitations and restrictions found in Dr. Wescott's medical source statement were temporary in nature; however, the ALJ offered no such explanation for declining to impose any correlating restrictions when forming the claimant's RFC. *See, e.g., Haga v. Astrue,* 482 F.3d 1205, 1207–08 (10th Cir. 2007) ("[T]his court may not create or adopt post hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").

Furthermore, the ALJ *is required* to consider the effects of all the impairments and account for them in formulating the claimant's RFC at step four. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. In this case, the ALJ failed to mention the claimant's non-severe impairments of mild degenerative disc disease of the lumbar spine, mild degenerative joint disease in his right shoulder, rotator cuff tear status post arthroscopic repair, hyperlipidemia, obesity obstructive sleep apnea, and subjective complaints of left knee and ankle pain in formulating his RFC at step four, and *never mentioned* left shoulder problems or carpal tunnel. Additionally, the ALJ failed to properly assess the combined effect of *all* the claimant's impairments – both severe and nonsevere – in assessing his RFC. *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Grotendorst's mental impairments were not severe, she gave those impairments no further consideration. This was reversible error."). *See also McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in

either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]").

Because the ALJ failed to properly evaluate the treating and consultative opinions contained in the record and further failed to properly account for the claimant's nonsevere impairments, the decision of the Commissioner should be reversed and the case remanded for further analysis by the ALJ. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 29th day of September, 2015.

_____

**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**